The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and its Honorable Court. All right, be seated, please. All right, this morning we'll begin with the case of Alig v. Rocket Mortgage, and Mr. Jay will hear from you. Good morning, Your Honors. May it please the Court, William Jay for the appellants. The Supreme Court has sent this case back for reconsideration in light of TransUnion, and we submit there are three aspects of TransUnion that require the conclusion that the District Court should not have certified the class, and the class certification order must be reversed. The first aspect of TransUnion I want to point the Court to is the... Maybe you could lift the mic up there. Is that the... Oh, I'm sorry. Can I do that? Is that better? That's terrific. Great. Thank you. They tell you never to touch the microphone. So the first aspect of TransUnion I'd like to point the Court to is the holding about unrealized risk. Unrealized risk of harm is not a constitutionally cognizable injury in a suit for damages. This, of course, is a suit for damages, and we submit that the only way in which this Court certified the class was in reliance on the risk, the exposure to the borrower's estimate of value. That's the first aspect of TransUnion. The second, which is related that I'd like to point the Court to, is the point in TransUnion about the fact that after judgment, judgment has been entered, awarding statutory penalties to a plaintiff class, it's not sufficient to rely on speculation or inference about whether the plaintiffs may have had standing. That has to be supported by actual evidence in the record, and that is lacking here because there is no evidence of harm to any of the unnamed class members who didn't pursue actual damages. Well, let me ask you this. I've been trying to figure out since that opinion came down. I don't think I have it figured out yet. We've bothered them, that opinion, on the fact that they paid $350 for an appraisal that was, let's just say, fraudulent, and it would appear that that might not be enough. So the question is, do we have to go to the point of looking at the class which would include only those people who were underwater? So I think that you've put your finger right on the point that the question is, what besides the payment of $350 would an individual plaintiff or a plaintiff class have to prove? And I think that there are two different answers. So an individual plaintiff might well come into court and say that entering into this loan into which I was induced caused me some harm by, for example, putting me underwater. That could be one way of showing that in an individual case. But the plaintiffs here didn't try to show that because this is a class action, and they want to show it by class-wide evidence. So I don't think that you could show by class-wide evidence on these facts that all the borrowers were underwater, particularly because the record shows that they weren't. I mean, all of the information about how much the value was and how much the loan was, that's all in the record. And you can see that there were borrowers who borrowed as little as $13,000, $25,000 against whichever value you choose, whether the estimated value or the appraiser's final value of $200,000, $300,000. My question would be, then, the class could be composed of borrowers who can show they were underwater. I don't think that it could, but the plaintiffs, I guess, could try to give some explanation of how they could show that by common evidence. But the class definition doesn't require that. So the class that the district court certified doesn't require that. And I think it would be incumbent on the plaintiffs to show how they could show that underwater aspect by common evidence. Because remember that the district court said that the standing of the unnamed parties did not matter. And so he did not look at it at all. He did not look at it at certification, and he did not look at it at decertification. So I think it's the right question to ask what kind of evidence would it take to show that a plaintiff has standing in this case. But I think it really is inherently individualized evidence, evidence that you're positing, evidence that a loan, inducement into a loan put a borrower underwater. Those are very individualized facts. But I think that there's a second component to it as well. Remember that this court said in its opinion that the record was devoid of evidence about whether any of the unnamed class members' appraisals were inaccurate. And so even if the borrower were to come in and claim that they were underwater, if the appraisal was accurate, then they've suffered no harm. And I think one key evidentiary point that I want to point the court to is the fact that not all of the appraisers even saw the borrower's estimate of value. You're saying we should send it back so that that evidence can possibly be developed by the plaintiffs? So we obviously... That would be the best, seems to be the best course of action rather than we speculate. You're saying these additional plaintiffs have no evidence as to the injury there because this court essentially looked at the main plaintiff here for it. But so you're saying send it back for... And this is a standing question for the most part. It's a class certification question. It's not a question about the court's jurisdiction. The focus on the standing, at least in terms of my perception of what's going on here, it's something really we didn't get too much of in the first opinion. Neither party really got into it. I'm not sure much was gotten into it before the Supreme Court transunion came down. And it seems to be something that's before us now. It's a question of standing. We determined there was a pocketbook injury. A law of pocketbook injury is pretty much the same. So the question that really comes up is, you know, did transunion, which dealt with a reputational type injury, impact this case that deals with an economic type injury? It did, Your Honor. I understand your position is it did. And I probably should say I know you believe that. But isn't there a differentiation when you're looking at that kind of a situation, particularly when you're looking at, I mean, you're looking at a situation where, Judge, if we accept there's a class certification, someone who is similarly situated to the plaintiff, And if the plaintiff can establish, the name plaintiff established, which I think the record evidence does show there's a differential in those appraisals with them. It's just you don't have the rest. But that's the reason these people are on. It seems part of the class certification is to say, yeah, you're just like this person here that has been injured. Not some hypothetical, well, we don't even know if they're like this. They say we're like this here. And that's the basis of class certification. If you're not in that class, then those people need to be excluded. So the class definition is everyone who had a refinance loan in West Virginia during the right period of time and on whose appraisal order form the borrower's estimate of value appeared. So that's a very broad certification because it includes people whose appraisals were accurate. It includes people whose appraisers didn't even personally see the borrower's estimate of value when they went out to do the appraisal. So is the remedy then to exclude those who do not fit within the more specific definition of those who can show that differential? So I think that you'd have to reverse the certification as it currently stands. And then the question would be, do the plaintiffs get another chance to show how they could prove what Your Honor is positing? How would you prove that by common evidence? You need to ensure that every possible member of a class belongs in that certified class in order to, if you find one that doesn't fit, do you get rid of the whole class? Or do you simply say that individual does not belong in the class? So remember that in TransUnion, Your Honor, the court affirmed that the named plaintiff had standing to pursue all of the claims at issue. And yet the court said that because there were a large number of uninjured people in the class, they couldn't just rely on the fact that the named plaintiff had standing and that they were, you know, through the typicality injury. But could they? Could they have said, well, there may be a large number who are not in the class. Then go back and exclude those who do not belong to the class. I don't think that that can be done just after the fact. Our friends on the other side cited a First Circuit decision about economic injury. And what that case says and what I think the consensus in the Courts of Appeals is that at a minimum, before you enter judgment in a certified class action, there has to be some way of excluding the people from the class who don't have standing. And where that inquiry... I see where you're going with this, but I want to ask this. How are you going to get a class action if you've got to go through every one of them and determine individually this? I mean, I understand transunion and where it's going, but again, it's a reputational injury type case. But I'm wondering, what is the purpose of a class action when you have... You can prove there are these facts. I mean, they did give these estimates. You did have this going on. There's some... All this is there. And at this point, to go summary judgment, there's not even an issue of fact that they say exists, but it could be an issue of fact as to whether it exists. But how do you get a class certification if you have to track down every one that's in the class and say, you have a cognizable injury and therefore you are part of the class? So in many class actions, it will be possible to prove injury on a class-wide basis. And under this statute, so remember this statute allows for claimants to come in and prove their actual damages. So that's one option. Another, on an individual basis, I do think it would be hard to certify a class on the theory that the plaintiffs have espoused. Because remember that their theory is that the mere exposure to the borrower's estimate of value, without proving that they were underwater, without proving that the loan terms had anything unconscionable about them, and without even proving that the appraisals were inaccurate or that the appraiser actually saw the borrower's estimate. All of those things don't exclude anyone from the class on the theory that the plaintiffs have espoused. So in other words, they persuaded the district court to certify a very broad class. And because they were doing summary judgment at the same time, they very consciously did not put in evidence of individual injury that would interfere with their ability to certify a class. That's a choice that they made. We don't know what theory they might come up with for how they could show injury by class-wide evidence. I do think it would be difficult. Go back to the question whether you can exclude certain ones. And it seems to me, when you previously argued, I'm not sure you had a problem with that, that they could be excluded. Now you say maybe there is. But would you say the trial judge would have that discretion? If the trial judge determined, I don't need to decertify this class. I can determine that those individuals who fit within this are now part of the class. In other words, he redefines the class. He doesn't decertify it. He says this class is a class of people who are just like these plaintiffs. They have this evidence here and this. And only those people are part of the class. Can he do that? I don't think he could do that at this stage. What does this stage have to do with it? I mean, we're in new law territory, aren't we? At this stage, we're on final judgment where he's awarded a money judgment on the basis of the class certification that he's entered. So I think that if this court were to set that aside and send it back for further proceedings. I'm sort of going there with you. I see where you're going. You're saying he would set, it would have, well, there's a theory. This court could go back and find every last one of these class members in fact do. Because I don't know if there's evidence they don't. It's just that there's nothing in evidence. So if they all do, there's no need to do anything. The award stands. If they don't, then he can reevaluate the award that's given based upon his assessment of what the class now looks like. So I agree with some of what your Honor said, but here's the qualification that I have. Because in order for the judge to do the work that you're positing, I think the comparison that he'd have to do involves 3,000 comparisons. Well, that's what district court judges do. They deal with some pretty complex cases, and this is not the biggest class that's ever been made. I mean, it may be 3,000, but there are a lot of classes out there, though, mass tort areas that are way beyond. And I'm not saying how it would be done or what it would be. It may well be the judge could say, if you want to be a part of this class, then you have to indicate this. But anyone who's a part of the class, if their damage is awarded to it and it's proven you're not part of the class, then you don't get it. But the burden, of course, is on the plaintiffs to establish that the common issues are going to predominate, that individual issues aren't going to predominate over the common ones in a class action. That's their burden. And the only way to find who's got standing and who doesn't is 3,000 mini trials about the retrospective value of an appraisal between 2004 and 2009, whether it was right. Well, at least from my perspective, it doesn't seem like to me you need a trial to determine that. That's an issue of fact. They are not. You either can show that or you cannot. But let me ask you this. End of the day, if you're not in federal court, aren't you back in state court? We're not, Your Honor. And there are two important reasons for that. One, the AILGS have standing because they claimed actual damages. And two, remember, the whole case is removed. It had a whole bunch of counts in it. Some of those counts, standing is not contested and final judgment has been entered in our favor. So there's no doubt that the federal courts had jurisdiction over this controversy on the date when it was removed. Well, that's the whole part about it. I mean, the state statute says, you know, if you take it here and you don't proceed here, you can come back there. There's a saving clause or something there. And the whole business of whether there's federal standing, we said no, it's back in state court. Why is it not? It's not, Your Honor, because what you're referring to, the statute says if at any time it appears the court lacks subject matter jurisdiction, then the case is remanded. This is one claim. It's a couple of claims, but, you know, like a nine-count complaint. The standing to pursue the claim about delivery charges and things like that, that's uncontested. And final judgment has been entered in my client's favor in that court. Either way, the state court will determine that. No, respectfully, no, Your Honor. We as a federal court can tell the state court you may not now take this matter? The federal courts have subject matter jurisdiction, so there's no basis to remand. The reason that the federal courts have subject matter jurisdiction is that the ALIGs have standing. The ALIGs had standing to pursue the other counts, and we're not challenging. Let me ask you about that. You're saying the ALIGs have standing? So the ALIGs had a claim for actual damages. What is their damage? What would have happened if the – let's assume the appraisals were inflated by undue influence, which is the allegation. Let's assume that the appraisals were one-half what they were. In other words, each house was appraised to be $100,000 for the two plaintiffs. What's the consequence? So they'd have to prove not just that the appraisal was inaccurate, but that they were harmed by entering into the loan. Well, that's my point. In other words, if the lender goes ahead and makes a loan despite the appraiser at $100,000, so the question is regardless of the alleged taint, they got the loan, and the loan was determined by the lender. And so the question is they paid for the appraisal as a necessary part of the transaction as demanded by the lender. No lender can lend money these days without an appraisal. And, of course, most of these are bundled, and they have to have that part of it. But the appraisal is not for the benefit of the borrower. The appraisal is except to the extent the loan goes through. But if the lender is willing to make the loan, my question is you said sort of casually the plaintiffs, the named plaintiffs, have standing. I can't quite figure out why you say that under transunion. So we're saying that they had standing when the case was removed because they were claiming that not only did they want this. I'm talking about now standing, jurisdictional standing. Why do they have standing? They pursued a small claim for actual damages, which has been resolved by stipulation. And there were, I think, three other members of the class also after the certification had the opportunity to come forward and say that they, too, were pursuing claims for actual damages. And those were resolved by stipulation. No, but the damages alleged in this case are the payment of the appraisal fees, nothing else. That's not true as to the ALEGS. The ALEGS wanted more than that. The ALEGS claimed harm from the loan itself. They claimed in the briefs, and that's what's on this claim that's before us. We're trying to figure out whether transunion affects this. And in order for transunion to affect this, the question is what's the nature of this claim? And everybody seems to concede in the briefs it's a money damage claim, that the injury is represented by the money damages in terms of $400-some dollars for one and $200-some dollars for the other. For the payment of the appraisal fee, nothing else is claimed. Now, my question is do you concede that's standing? No. The ALEGS have an individual claim that they're not trying to base the class on. In other words, they're not saying we have actual damages. Focus on the transunion issue. Right. So their claim for statutory penalties is based on the idea that the $350 that on average. One paid $350. One paid $400-something. That's right. I'm not talking about the two plaintiffs because we've got to get by the two plaintiffs. That's not injury. How can you get by that? Transunion said you have to look at each individual class member to see whether the person has standing. That's jurisdictional. It says, and standing is not dispensed in gross. Rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek. For example, injunctive relief and damages. That's right. Now, that's the burden when they're addressing the class action. I'm setting that aside. I'm not talking about the class action issue. I think what the Supreme Court was troubled by is whether the ALEGS have standing. So, I think that respectfully… ALEGS and who is it? The Shays. The Shays. So, they're trying to make two different arguments in this case. So, they got a class certified based on the idea that just paying the appraisal fee… And you set aside the class action. I'm not talking about… We have to talk about the individual claims in order to measure the class. So, if the plaintiffs don't have claims, the class ends. You can't represent them. So, you start with the ALEGS and the Shays and tell me why they have standing. So, this is not in the record. All that's in the record about their actual damages claim is that it was resolved by stipulation. That's why I'm having a harder time answering your question. But it is not based on the appraisal fee. The whole claim is for their justification for the claim is the payment of the fees for the appraisal. If that's the basis of the claim, that is standing? That would not be enough for standing, no. That really is our point. You're blurring a lot of arguments and I don't think… Well, can I just clarify that point just briefly? The on average $350 is what they're trying to base the class wide standing on. You have to start with the plaintiffs. You do. If the plaintiffs don't belong in the suit, you throw it out. And the class members, they have not even attempted to prove as to each class member the standing. That's right. That has not been proved. So, the question is to start with the plaintiffs. They have made a claim. And their claim is I was injured by paying for an appraisal fee that was tainted. And my damages are the amount I paid for the appraisal fee. That's their claim and they made it pretty clearly in their brief. You can ask my friend whether that's the extent of their claim. I've read it in their brief. I just want you to answer it. I'm surprised you're not taking advantage of it. That is not a sufficient basis for standing. And that is what we've said in our briefs. Is that the issue in the case? It's not, respectfully, Your Honor, because the issue is not whether the federal courts have jurisdiction over the case. The question is whether the district court's class certification should ignore the fact that standing would be an issue that would predominate. Because there are so many members of the class whose standing have to be inquired into. You don't have jurisdiction over the case. It goes back to the state court. Again, no, Your Honor. You want to go with this. It is not, Your Honor, because there are eight other counts in this complaint. Let me ask you about the state. If they were to bring an action now or someone applies now in state court, can you do as you did then, remove it to federal court knowing that standing doesn't exist? So, if there were a one-count complaint. I'm asking the same case is filed now. Could you remove this case to federal court? You're asking me to assume away an important point, which is the other counts in this complaint. Don't assume anything. Take this case. This case is starting right now in state court just like it did. You're the one that asked it to come to state court. The plaintiff's objected. The court wanted to send it back to state court. You're the one that objected. And ultimately, we vacated it so we could keep it here. We didn't get to the standing thing. My question is simple. If we were at point one where the case was in state court, could you remove this case to federal court? Yes. And why, knowing there is no standing? So, there are all the other counts on which standing, I think, is indisputable. The accounts on which we won on the merits. The one count. Okay. That wasn't what I took this question to be, so I'm sorry about that. So, on the one count, so then the question would be, do the ALIGs themselves have standing on grounds that are not common to the class? So, if they're not making arguments for their own standing, in other words, if they said they had no actual damages and their only theory is that we paid for the appraisal, then they wouldn't have standing and that wouldn't belong in federal court. It wouldn't belong in state court either. As I understand West Virginia... The question was whether you could remove it. And your answer should be the case wouldn't need to be removed. You just file a motion to dismiss for lack of standing in the state court. I think that that's right because West Virginia has... Because of the West Virginia statute that goes against this federal statute in terms of the federal determination here of whether standing exists. So, as I understand it, West Virginia has a similar concept of standing to Article III. And so Judge Niemeyer is right that when plaintiffs file a suit in West Virginia state court without standing, you can move on that basis. So then you would win in state court, you're saying? If the ALIGs, it would depend on what the ALIGs were arguing, right? And that's really a question for my friend. But they had a claim for actual damages, which is what makes them unlike the rest of the class. And there's another point as well. They at least actually claim that their appraisal was inaccurate. They submitted a retrospective appraisal. How is that a damage? It's not enough, but it's a start. It's not enough, but it's a start. How is it any claim? That appraisal is not their baby. They did not order an appraisal for their own benefit. They ordered it because they were told they had to do it and the bank wanted it. So the question is, if you made that same claim in the state court, well, I understand. We're way over time and we're through the red light and you can handle the rest on rebuttal. Thank you, Your Honor. All right, Mr. Gupta. Thank you, and may it please the court, Deepak Gupta, for the plaintiffs, it's good to be back with you in person. I think it's important at the outset to try to clarify what is at issue and what is not at issue. The only question before the court on remand is whether the panel's prior published decision is consistent with the Supreme Court's decision in TransUnion versus Ramirez. And the answer is that it is. The merits are no longer at issue. It's a little deeper than that because TransUnion goes to the subject matter jurisdiction of the court, the power of the court to act. And if there's no standing of the plaintiffs, it's Article III standing, then we don't have jurisdiction to hear the case. Well, that's right, Judge Neumeier. So it's TransUnion honed in on that concept. They sent this one back to say analyze it under TransUnion. Before you go, I want to make sure you said that's right. Are you saying it's right that based upon if we follow Judge Neumeier's statement, we don't have subject matter jurisdiction over this case? No, no, he's certainly not right about that. What I'm saying is Judge Neumeier is right. I'm just saying, yeah, I'm not saying that. If you follow that, then that's essentially what he's been saying. We don't have subject matter jurisdiction over this case. If there's no standing, there's no subject matter jurisdiction. Correct. Judge Neumeier is right about that. I'm not talking about saying there is subject matter jurisdiction nonetheless, that therefore you can't go back to state court. No, I think I was just trying to agree with Judge Neumeier that the question here is subject matter jurisdiction. And the question is whether TransUnion changes anything about that. This court had an analysis of Article III standing in its opinion. And as you said, Judge Wynn, it was bottomed out on pocketbook injury. And TransUnion didn't change anything about the law of pocketbook injury. In fact, TransUnion clarifies the correctness of this court's decision. Here's the only thing that the Supreme Court said about pocketbook injury. It made clear that in the Supreme Court's words, certain harms readily qualify as concrete. And among those, the most obvious are monetary harms. The rest of the TransUnion opinion is about different forms of what the court called intangible harm that are not at issue here. My friend was able to persuade the Supreme Court to send this case back by characterizing our theory of standing as a risk of harm theory. The first suggestion that this case had anything to do with standing on the basis of risk of harm was in the petition for certiorari. That's never been our theory. We disclaim that theory. The only theory is the one that this court credited in its published opinion, which is that all of the plaintiffs, every single one of them, paid money for an irredeemably tainted appraisal. And that is a simple theory of Article III standing. It's more complicated in most product liability or antitrust or securities cases where you have to engage in counterfactual inquiries into what portion of a charge might be attributable to the harm. But here, there was a specific denominated fee for the appraisal. This court has concluded, based on abundant record evidence, that those appraisals were irredeemably tainted. And that's the end of the matter. That is Article III injury. So if we just reissue this opinion and add a line that says we have considered TransUnion as you directed, it would stand by our opinion. I think that's precisely what you should do, Judge Floyd. And that's actually what happens in a great number of cases that are sent back on GVR orders. We cited some studies on this. Many times, the Supreme Court simply, you know, they don't spend a lot of time looking at these decisions when they send them back with a GVR order. There's an allegation by one party that something in a new Supreme Court decision warrants a look again at the case. And this court should look again and conclude that its previous analysis was 100% correct. TransUnion does not change anything about the law of financial injury. And if it changed the law in a case as simple as this one, it's hard to imagine how you would have Article III standing in the kinds of cases I was describing, where financial injury is far more complex. So I think, you know, what my friend has been able to do is inject in all sorts of additional questions about re-litigating the merits, re-litigating class certification. But the only thing that you have to ask on remand from the Supreme Court here is does anything in the TransUnion opinion change anything you said in your prior published opinion? Does it matter that TransUnion concern a reputational type injury as opposed to an economic injury? Well, I think that's what made TransUnion a harder case because it did not involve a classic financial injury. Remember, none of the plaintiffs in TransUnion paid anything to the defendant. And the same thing was true in Spokane. The court in its comments went out of its way to make clear that while it was dealing with reputational damages, it was also dealing with monetary damages and other forms of relief. And they went, many times they said that explicitly. That's right, Judge Niemeyer. I think it's very important to distinguish the form of relief that the plaintiffs are seeking from the form of injury that they're claiming. And that's what I'm talking about. Nothing in TransUnion, nothing in Spokane, nothing in these more difficult cases involves plaintiffs who are paying money to a defendant for a product or service, which is what you have here. And that's why you have these more difficult questions where there are abstract forms of harm. One more out-of-the-way question, which was already debated. TransUnion also adds a whole section that talks about that every member of the class has to satisfy the standing that has to be demonstrated by the plaintiffs. That has almost concededly not been done in this case. No, I don't think that's right at all, Judge Niemeyer. I think that this court's prior opinion already concluded that every single member of the class paid the fee for appraisals and concluded that there was Article III standing in precisely the same way for each one of the class members. Last time this case was before this court, we all assumed that it was the rule that each class member had to show standing. Appraisals, but there's no evidence that, number one, that every class member's estimate of value was before the appraiser. Number two, there's no estimate that the appraisals were in any way tainted as to each class member. All you have is the amount of fee paid, which was required by the bank. The bank hired the appraiser, and the borrower has to pay that fee as part of the transaction. The amount of the fee paid by each class member in just the same way is the basis for Article III standing. That makes it a damage. Right, and I think we have to be really careful to not conflate standing and the merits. This court has been clear, including at the summary judgment stage, that standing and the merits are separate, and when you make the Article III standing inquiry, you assume that the plaintiffs would prevail on the merits. Now, I understand, Judge Niemeyer, you may disagree with me and conclude that my clients should not prevail on the merits, but I hope I can persuade you that we at least have standing to come into court and then lose on the merits. Standing, you have to show that each person had a concrete injury by reason of the alleged wrong. Correct. And if we have no evidence that these people suffered any of the wrong, in other words, that, number one, their own estimates were provided to the appraisers or the appraisers looked at them or relied on them, then we have, they don't, they weren't injured. Well, with respect, Judge Niemeyer, that's just relitigating the merits, and I think what this court concluded based on the... The merits include the injury. What this court concluded is that, and I think correctly, is that all of these appraisals were irredeemably tainted because the buyer's estimated value was sent to the appraisers, and in fact... That's been established not to be so. That is not... You have not demonstrated that in this case, and that's your burden. That is, you know, that's, it's just not the case that we haven't demonstrated that. What this court said in its prior decision was that it was Quicken's standard practice to provide the appraisers with those estimates, and a spreadsheet in the record, and this is Joint Appendix 730, shows that Quicken included the owner's estimated value on every appraisal order regarding loans refinanced in West Virginia during the relevant period. So that's the entire class. Standing is the same for every single class member. This court got it exactly right in its prior published opinion, and all the court needs to do is reiterate the same analysis and explain that TransUnion changes nothing about that. And I just, I do want to quickly, while I'm up here, mention the two cases that I'm sure we'll hear about if you give Mr. Jay time for rebuttal. I know he went over, but I do want to address them. There are two cases by Judge Smith from the Third Circuit. The only two cases really on Article III Standing that my friends are relying on, and I think they're really marginal cases, and the fact that this is the best they can do shows how different this case is from the cases that go south on Article III Standing. The first is a case in which plaintiffs sued to try to enforce tire registration requirements. It's the Thorn v. Pep Boys case from the Third Circuit. And there you had a plaintiff that was just trying to enforce a regulation, a federal regulation that had no private cause of action that required tire dealers to register cars. But the tire dealer there didn't charge some kind of tire registration fee. They just sold the plaintiff a tire. The plaintiff bought the tire. There was nothing wrong with the tire. And the plaintiff tried to sue over that tire registration failure. And what the court said there is you haven't proven any financial harm. This isn't a worthless product. It's not even a product that's worth a little bit or a tiny bit less as a result of that. And so those are the kinds of very marginal cases that produce potentially difficult inquiries about financial injury. I thought this case was about borrowing money. Each borrower sought to borrow money at a certain rate and a certain amount and use the money to improve their financial situation. That's absolutely right. Just a minute, please. Sure. Each person made an application to borrow money, and as a condition of that, they agreed to pay a fee that the lender would incur in hiring an appraiser. Right. And that was a necessary cost fee. They did not hire the appraiser. They didn't see the appraiser. They didn't talk to the appraiser. They were interested in a loan. And so why isn't that analogous to registration in the Third Circuit? And, again, I understand you disagree with me on the merits, but all of that is at odds with what the panel said. Let's analyze. What the panel said about the merits, and I think this is right, is that the plaintiffs were all unconscionably induced into a loan transaction through the tainted appraisals. And appraisals are central. The amount of the loan is central to the loan transaction. This was a bank, not to the borrower. The borrower couldn't care less. If a loan is made without an appraisal, they couldn't care less. They were not affected by one way or other on the appraisal. All they wanted was the loan to go through. West Virginia's legislature made a different judgment when it legislated to ensure that lenders would not coerce appraisals into tainted appraisals, understanding that it affects the integrity of the process and has a consumer protection impact. And, again, that's the merits. We can disagree about the merits, but I think it would be a really big transformation of the law of Article III standing to preclude plaintiffs from being able to even go into court and get their day in court when clearly they paid money out of pocket for what they allege and what we've proven, I think, is an irredeemably tainted product. Thank you. Let me ask you this. You brought this action under the West Virginia Consumer Credit Protection Act. Could it be as simple as your suit is predicated on an unlawful practice? Yes. That is, tainting an appraisal? Yes. As simple as that? Yes. If you want to put it this way, we paid money. We paid an unlawful fee. We paid a fee for an unlawful service, for a service that this Court has already concluded was tainted. This is not a difficult case for Article III standing. This is a simple case for Article III standing. I realize that the Supreme Court has raised some very difficult questions about Article III standing in intangible injury cases, but this isn't that. This is as simple as that. It's a simple consumer protection case. Now, there are some difficult questions about what the- It seems to me if you recharacterize this case in accordance with the historical facts, the plaintiffs got their money. They were not prompted to go in underwater. They paid the transactional costs. They were loaned, and they got their loans taken care of, and they answered a survey. They found the whole process to be excellent, five out of five. A few years later, the practice by industry rule was changed, whereas you do not provide the borrower's estimate to the appraisers. But at the time these loans were made, the common practice was that you do. So the whole process was carried out normally. Two years later, the change was made, and this lawsuit is essentially a lawsuit just challenging a new rule retroactively, which is the type of abstract claim that the Supreme Court is troubled by. So, Judge Neumayer, I don't want to try to persuade you that your dissent was wrong. Well, I don't need to persuade. Just focus on the facts. I'm trying to. What this court said is that these were particularly questionable practices. That was this court's words, and that even at the time that Quicken was engaging in these practices, regulators had raised concerns, and it became a universally condemned practice by the end of the class period. As you recall, those statements were made in the context of an industry that was raising the whole center was on appraisals, and if you keep upping the appraisals, you allow the borrowers to make bigger loans than they can handle. Right. And then they go underwater. That's right. And the whole idea was to protect the borrowers who went underwater with this undoubted practice. But these two borrowers bought within their means. They bought within the original appraised amount and, in one case, the revised appraised amount, and it didn't fit any of those patterns, and the loans were made in accordance with the existing practices. Judge Neumeyer, I think that, with respect, the possibility of people going underwater and all of the potential harms that could consequentially follow is a distraction when you're asking about Article III standing in this case. About the whole basis for the change. And one way to think about it is imagine that the West Virginia legislature had passed an even simpler statute. They had simply said it is illegal to charge money for an appraisal where the lender provides the borrower's estimated value to the appraiser. Imagine that's the case. And it's a different case than this one. It's a simpler case. But the theory of Article III standing would be precisely the same. We would have paid money, the charge would be illegal, and then we would be entitled to get the damages as a result. Now, the reason that the West Virginia legislature would have passed that hypothetical statute is presumably because it had concerns about people going underwater, about the integrity of the entire process, and all the other things you were talking about. But that wouldn't be the basis for Article III standing, and it would be quite strange to say that because the legislature had those serious concerns in mind in passing that statute, that that somehow deprives the plaintiffs of standing where they would otherwise have it. Take Judge Neumeyer's argument about retroactivity. I mean, the statute doesn't provide for a retroactive application of this unlawful practice. So, unless you have a reason to say so, but why shouldn't the class be limited to those who paid this fee after the legislature passed the statute addressing this practice? So, I was just imagining a hypothetical statute, and in my hypothetical, the statute, just as in this case, predated the class period, so there's no retroactivity problem. I agree that if there were a statute passed after the conduct was engaged in, then you would have a retroactivity problem. That's not the case here because we sued under the law as it existed throughout the class period. Now, I do think it's important to point out that, as you said earlier, standing is not dispensed in gross, and so standing has to be analyzed for each claim and for each form of relief sought. We've mostly been talking about the unconscionability claim, which makes sense because that's the claim that this court affirmed, and it's the lion's share of the liability here. I think the standing inquiry is basically the same for both claims because in both claims there's a financial injury. The plaintiffs paid these fees for the appraisal, and that's the focus of the action. But I thought it would be useful to just point out very briefly that if you're clarifying the opinion, if you're adding some language about how the opinion is consistent with transunion, you could also explain that the theory of standing is the same for both of the claims that the plaintiffs are pursuing and that there's Article III standing for each class member because each class member paid the requisite fee. Thank you. If we lack standing here, do you still have an action in state court? I think the law in the Fourth Circuit is that when the federal court loses jurisdiction because of lack of Article III standing and the case came from state court, the case has to be remanded to state court. Now, Mr. Jay tried to resist that conclusion by pointing to the ALIG's individual damages claims, but those claims are not live in this case. They're not before this court, and I think they have nothing to do with the analysis. What do we have before us? We have what, the statutory claim and a breach of contract claim? Correct. Correct, and you've remanded on the breach of contract claim. If there are no further questions, I'll sit down. Oh, sorry. In the prior opinion, you did indicate or reject the argument that the plaintiffs were not injured because they benefited from obtaining the loans. Did transunion affect that determination by this court? No, transunion has nothing to say about the merits of this case. Transunion only has anything to say about the paragraph or two in which this court concluded in a very straightforward way that there was paradigmatic financial injury here. So I think the only task before you is to look at those paragraphs and to see if there's anything, any language that needs to be added to make clear that the court's opinion is consistent with transunion. And I think, frankly, if the suggestion had not been made by my friends on the other side that this case had anything to do with a risk of harm theory, I doubt we would be here in the first place. All right, thank you. Thank you. Mr. Jay. Thank you, Your Honor. I'd really just like to focus on three points in rebuttal. One, dealing with the colloquy that Judge Floyd had with my friend. The second, dealing with which appraisers actually saw the borrower's estimate. And the third on the jurisdictional question. So, Judge Floyd, you asked my friend, basically, whether the injury from paying the fee was paying for an illegal appraisal or something to that effect. And he hypothesized a statute that the legislature could pass that would make the appraisal illegal. Now, they had a claim against the appraisers under a different statute saying that they'd violated their professional standards. And that claim failed. The reason for that is that nothing in the West Virginia law made these appraisals, per se, unlawful. So, if you're going to say that the injury is paying for the appraisal, you have to get something less than what you paid for. And that's precisely what they don't have any evidence of, because this is not disputing the merits, because remember that this court interpreted the merits of the West Virginia claim not to require any proof of reliance, not to require any proof of damages. So, it includes within the class even people whose appraisers never actually saw the borrower's estimated value. So, nothing in the record suggests that these plaintiffs expected to get an appraisal that didn't just comply with the applicable professional standards, but complied with the level of independence that our friends on the other side say is required. Not by the appraisal law, but by this consumer protection statute. So, in other words, they got what they paid for. That's why the $350 on average is not injury, that they have not shown anything in the law that makes those appraisals unlawful, per se. We did conclude that they got less than they paid for. You said they got a tainted appraisal. You did say that. How did TransUnion change that? Right, because what did the court say? It said tainted by exposure to the borrower's estimated value. And TransUnion talks repeatedly about exposure and says that exposure to a risk of harm is not cognizable injury. The only way in which the court could say class-wide that everyone's appraisal was tainted was by saying that the mere risk that showing the appraisal company on the order form the borrower's estimated value, that's enough to make the appraisals worthless. Well, I thought the point of my question, and maybe I didn't ask it right, I thought their theory was we're suing you over this practice and nothing else. And the practice was lawful at the time. The practice was consistent with professional standards, and as the court pointed out, it was quite common. Well, was it at the time? Do you mean those borrowers before the passage of the Act or to all? It's not the statute that they're suing under. There was another change in law that Judge Niemeyer refers to, and that's after the class period that says don't provide the borrower's estimate to the appraiser in a refinance loan. Could they maintain a class post-statute where you engage in this practice? I think that someone would have standing if there's a law that says don't charge this appraisal fee and the appraisal fee is charged in violation of the law, then that could be the basis for a claim of standing. But that's exactly what you don't have here. All the court says in its opinion, toward the end of the opinion, the court says that it is reasonable to suppose that the borrowers each assumed that the appraisal provided a valuation of their homes without being tainted by the borrower's estimate of value. But that's just a risk of harm point. So that's one of the points I wanted to make. The other point on the merits is to Judge Niemeyer's question to my friend about whether the appraisers actually saw the borrower's estimate. He said every single appraiser did, and that's just not correct. We would point you to Joint Appendix 1052 and 1059-60. We've pointed this out repeatedly in our briefs, and I have not seen a response from them, about why they could have standing for injury if their appraiser never actually saw the number on the order form. The person who takes the order and schedules the appraisal is an administrative clerk. It's not the appraiser who goes out and looks at the house, and that's with the record. We'll show you. The question is not more so that they didn't get something independent. You recall the plaintiff's example in the brief, the one about the surgeon, and the surgeon charges $1,000 to get your second opinion. Then he goes to the second opinion, Geer's opinion, and the question is whether the person has gotten something, an independent evaluation. Why is that not here? You paid $350. Someone provides an estimate to the appraisal. Why is that? I understand the risk of harm, but I'm not following it with regard to, why is it not you didn't get something you paid for? You paid for an independent appraisal. So two responses to that. One, our friends on the other side smuggle into their hypothetical that the doctor promised that the second opinion would be uninfluenced by the first one. And second, really. Isn't that inherent in an appraisal, though, that it's independent? No. Or do you think appraisals, when you get an appraisal from someone, it can be, it doesn't have to be independent. It can be someone else's appraisal that's helping you out with it. I thought that's what you paid for. It seems like there's even a regulation in terms of appraisals that you have to do it independently. But these appraisals all comply with the independence rules. That's the point. They all certified that they were independent when they signed them in the form that they signed them. And that had an independence. So there would be a requirement to show, in fact, a disclosure of the borrower's estimates. Right. And exactly. Doesn't certification make it so if, in fact, you can show that something was provided in advance? It's like a certified complaint. I mean, if you've got a certified complaint, they all said it in the complaint that it's certified. This is what it is. Why is that not sufficient if you can just say the certification of an appraisal alone? I mean, even with the surgeon, you say promise, but if the second surgeon acknowledges, yeah, I got this, I mean, why is that not a challenge to the independence of it? All of these appraisals are in compliance with the professional standards, and that's exactly what someone getting a refinance loan would expect. We're dealing with issues of fact here, and all these appraisals are in compliance with professional standards. That's ball-of-plate language. I mean, I know what that is. That reads very well. But if you've got evidence to show otherwise, why is it not challenging that independence? Remember, Your Honor, it's not showing that they were in violation of professional standards. These were all in compliance with professional standards. So we're not just talking about an appraiser reciting something that might not be true. It's true. More pointedly, is there evidence that the appraisers in the class in this case did not get the borrower's estimates? Is there evidence? So there are two declarations from appraisers who performed appraisals for Quicken Loans during the time period, and they said that one of them says, when I went out to do an appraisal, I would not have seen the estimate on the order form until after I'd done the appraisal and arrived at the value. And the other, it's a little bit less detailed, but it's to the same effect, said that the order form goes to the office admin clerk. So if I understand correctly, your argument is that with respect to some appraisals at least, there is no factual support for a taint. There is no factual support for a taint. That's why this class definition is so overbroad, because the estimate doesn't even have to have been shown to the appraiser for the borrower to be within this class. And that really is kind of the fundamental point. That is one point. I don't know if that's the Supreme Court's interest, but that's a point of class members satisfying the standard. In other words, the Supreme Court did go out of its way. I mean, they said, for instance, every class member must have Article III standing in order to recover individual damages. That's right. And then it goes and it says that the plaintiffs must demonstrate that for each one. And so that is clear as a bell, and that is a problem. I don't know if the court sent it back for that or sent it back for the standing that the AILGS basically were not harmed in any sense. In other words, they suffered no injury by reimbursing the bank for its appraisal fee. And people whose appraisals were accurate, as the court acknowledged in footnote 22 of its opinion, those people aren't harmed either. The last point, just to answer Judge Wynn's jurisdictional question, if you look at the judgment, starts at page 627 of the appendix, you'll see all of the claims in this case. And any one of those claims that's not at issue at this point could sustain federal jurisdiction in this case. Remember, the removal is jurisdiction over the whole controversy. So if a claim, let's say claim one, were dismissed for lack of standing, then okay, then they could maybe refile that somewhere else. But the whole controversy wouldn't be remanded. I know you're so interested in the class, and it's very important because that's where all the money is in this case. But you don't call the claim of a class member anything more than a claim that is represented by the class members, I mean the class representatives. So you need to focus on the class representative's claims. If they don't have standing, then there is no class. They have to represent the class. Or their lack of standing also represents the class's lack of standing. So now there is always a doctrine that if you knock out two plaintiffs, you can look for some others. But that wasn't done in this case. Everything you said is true, but as you just read from TransUnion, even if the named plaintiffs have standing, it's still a problem if a large number of members of the class don't have standing. Well, that seems to be your main point, but I'm not sure that's the Supreme Court's main point. But anyway, I see we've gone through the red light. I do want to follow up a little bit on that because that's an interesting point. It seems to me if we go in that direction, then there's just no class. You're just saying even if you show injury in fact, or you show you have something as the named plaintiff, then from Judge Niemeyer's perspective, there's no such thing as a class action. I don't agree with that, Your Honor. I mean the question is just under 23 v. 3. In this instance, there's not one. How would you show what would be necessary in order for it to show standing in this case? I think they'd have to pursue these as individuals because we haven't seen any basis for them to do it as common evidence. So you're saying a class action, if there's a group of people who meet everything the plaintiff does, they cannot be certified as a class. So TransUnion makes clear that you have to have standing beyond just reciting the elements of the cause of action. Winning on the cause of action is not enough. And that whether you have standing is something that you can't dispose of just based on the named plaintiff. So there's no such thing as a class action. I don't agree with that. The question is can you prove standing by common evidence? In some cases, I think you would be able to. There's no such thing as standing in this case. In this case, I don't… You can't have standing with these kind of facts. You can't have standing even if you show they paid this fee and the fee was actually looked at by the appraisals, which I'm going to follow where we're going here with this. They actually looked at it. There's that difference. He was influenced by it. It doesn't matter. You've got to do every one of these claims individually. You cannot have standing. Is that your answer? So I do think that you'd have to show something like that to show injury in a case like this. So that would give you standing? I want to make sure I heard… I'm just trying to follow Judge Deboer's hypothetical that even the main plaintiffs don't have it. If they don't have it, then you can't prove standing in a case like this. So maybe I misheard your question, but I thought you asked me to assume that they could show that they were injured from the loan. Well, show that they could show the same thing as the plaintiff. Every last one of them showed the same thing. You're saying you couldn't certify that as a class. I am saying that because it couldn't be done by common evidence. If you wanted to give the plaintiffs another chance to do that, that would be up to the court. The critical element is the disclosure of the borrower's estimate to the appraiser. And you're saying that disclosure didn't occur or the appraiser didn't see that in every case. That's definitely right, and they can't show harm. Even if they did, you don't have standing. Even if the appraiser saw it, I think that wouldn't be enough to have standing. I don't follow that critical point at all. If you see it, what's the difference it's going to make? Under this kind of discussion, I don't get it. The fact that some appraisers never even saw the borrower's estimate I think highlights the fact that there are people in this class who really can't prove injury. Those aren't the only people who can't prove injury, but I think it really puts a fine point on it. But if every appraisal got it and said, yeah, we saw it, it still wouldn't make a difference. That would not be enough to have standing. That's right. That point, I don't know where that point goes. It's part of our argument. It's certainly not the only part. Ultimately, the district court didn't even look at the unnamed standing. I think we've heard it, and we've let you go on a little bit. I appreciate it very much, Your Honor. Thank you. I appreciate your argument. It's our practices. Well, we know you well, and you probably know our practice well. You've been down here, and we're happy to have you back again. Our practice is normally to come down and shake hands with counsel. It's something we are not going to give up. It's a tradition that goes back to Chief Judge Parker, and we're very proud of it. But we have continued our protocols on COVID at least through this term, and we don't know when we'll pull it up. So as part of that practice, we're going to refrain from actually physically shaking your hands, but we're shaking your hands conceptually. Thank you for coming, and have a good day.
judges: Paul V. Niemeyer, James Andrew Wynn, Henry F. Floyd